IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 20, 2013

**STATE OF TENNESSEE v. BRANDON L. KIRK**

**Appeal from the Circuit Court for Robertson County**
**Nos. 2010-CR-668, 2010-CR-670      Michael R. Jones, Judge**

**No. M2012-01331-CCA-R3-CD - Filed June 18, 2013**

The Defendant, Brandon L. Kirk, contends (1) that the evidence presented at trial is insufficient to sustain his jury conviction for attempted second degree murder and (2) that the effective twenty-two year sentence imposed by the trial court is inconsistent with the purposes and principles of sentencing because the trial court failed to state the facts it considered in mitigation and to make the requisite findings to impose consecutive sentencing. After our review of the record and the applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Roger E. Nell (on appeal), District Public Defender; and Timothy J. Richter (at trial), Assistant Public Defender; for the appellant, Brandon L. Kirk.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

This case arises out of the domestic assault of Chandra Thorpe on September 11, 2010. The Defendant was arrested as a result of that assault and subsequent events, and he was held in custody. While in general sessions court awaiting his hearing on the charges arising out of the September 11th incident, case number 2010-CR-668, the Defendant

attacked a court officer, Jimmy Rippy. As a result of that assault, the Defendant was indicted on October 27, 2010, for the attempted first degree murder and aggravated assault of Officer Rippy, case number 2010-CR-670. The Defendant's trial on those charges was held October 31 through November 1, 2011, and the following facts were presented.

On September 21, 2010, while awaiting his hearing on case number 2010-CR-668 in the general sessions court, the Defendant informed officers that he needed to use the restroom. Officers led the Defendant to the restroom and uncuffed him. Officer Jimmy Rippy, who was not one of the officers who escorted the Defendant to the restroom, was told to retrieve the Defendant and bring him to court. When Officer Rippy began to re-handcuff the Defendant, he jerked away and thrust a makeshift weapon, fashioned from a toothbrush handle,[1] at Officer Rippy. As the Defendant attempted to stab Officer Rippy, he said, "die, mother f--ker." Officer Rippy was able to block the Defendant's attack, but the weapon still scratched his neck. After a two-day trial, the Defendant was found guilty of the lesser included offense of reckless endangerment in Count 1 and of reckless aggravated assault in Count 2.

Regarding case number 2010-CR-668, the Defendant was indicted for the following offenses occurring on September 11th, 2010: Count 1, aggravated assault (Ms. Thorpe), a Class C felony; Count 2, aggravated assault (Ms. Thorpe), a Class C felony; Count 3, attempted first degree murder (Ms. Thorpe), a Class A felony; Count 4, attempted aggravated assault (Ms. Thorpe); Count 5, aggravated assault (Ms. Christine Deitz), a Class C felony; Count 6, aggravated assault (Officer Michael Loyd), a Class C felony; Count 7, reckless endangerment (Ms. Deitz, Ms. Ann Brooks, and B.K.[2]), a Class E felony; Count 8, vandalism, $1000 or more, a Class D felony; and Count 9, theft of property, $10,000 or more, a Class C felony.[3]

The Defendant's trial on the September 11th offenses, case number 2010-CR-668, was conducted January 31 through February 2, 2012. The following evidence, as relevant to this appeal, was presented to the jury.

Ms. Thorpe testified that approximately two weeks prior to September 10, 2010, she

---

[1] Correctional officers testified that they had previously searched the Defendant's cell and found only a toothbrush head. The Defendant denied any knowledge of where the handle of the toothbrush was located, and officers did not find anything on the Defendant's person during a strip search. They did not search his anal cavity.

[2] It is this court's policy to refer to minor victims by their initials.

[3] This charge was later amended to theft of property, $1,000 or more, a Class D felony.

and the Defendant had ended their six to seven year-long relationship. During this time, the only communication they had was when the Defendant called to talk with their two-year-old son. Around midnight on September 11, 2010, the Defendant arrived at Ms. Thorpe's home, knocking on her door and pretending to be a neighbor. When she cracked the door, the Defendant forcefully pushed it open and began to physically assault her. For the next two hours or so, the Defendant vacillated between being calm and threatening to kill her and himself, brandishing a kitchen knife in front of Ms. Thorpe and their two-year-old son. Ms. Thorpe testified that the Defendant told her "[i]f he couldn't have [her,] then no one else could and [that they] were all going to die together that night." When the Defendant went to the restroom around 3:00 a.m., Ms. Thorpe seized her opportunity to escape, grabbing only her keys and her son and running to her car. The Defendant ran outside, yelling and pulling on her car doors to gain entry into the car. Ms. Thorpe hit the Defendant with her car at a slow rate of speed in her attempt to drive away. She stopped at the Sudden gas station two blocks from her home to call 911.

Ms. Thorpe went inside and asked the cashier to call 911. Once on the phone with the 911 dispatcher, Ms. Thorpe briefly explained what had occurred in her home and that she needed police assistance. Approximately three minutes after Ms. Thorpe entered the store, and moments after she ended the 911 call, the Defendant, driving a stolen black Lincoln, crashed into the store. The Defendant immediately jumped out of the car and headed towards Ms. Thorpe, who was trying to escape through a locked emergency exit located in the Dunkin Donuts section of the gas station. The Defendant approached Ms. Thorpe, threatening to kill her. Ms. Thorpe testified, "He started hitting me, choking me, asking me was I ready to die, die, b-tch, die. You are going to die tonight. He was grabbing my neck and twisting it forcefully saying I am going to snap your neck, you are going to die tonight, you are going to die." She explained that the attack occurred "kind of everywhere" because the Defendant was chasing her around the store. During the attack, the Defendant repeatedly hit Ms. Thorpe on her back and head with a barstool while she was trying to get their son behind the counter and away from the attack. She testified that he also banged her head on the store counter three to four times. This produced a huge, very painful knot on her head that was "gushing blood." Ms. Thorpe explained, "It was extremely forceful. I got dizzy. I almost passed out and I remember praying, God, please help me if the cops do not get here soon, I am about to die." As he was striking her head on the counter, the Defendant said, "Die, b-tch, die. Are you ready to die tonight? You are going to die." Ms. Thorpe testified that just before the police arrived, the Defendant was blocking her airway, and she believed that she only had about "thirty seconds to live." She fled outside soon after the officer entered the store.

Christine Hammer[4] testified that on September 11, 2010, she was working the night shift at the Dunkin Donuts located inside the Sudden gas station where the incident occurred. Ms. Thorpe came in with a two-year old around 3:00 a.m.; she was frantic and terrified and screaming for someone to call 911. As Ms. Hammer and the gas station cashier led Ms. Thorpe to a seat to wait on the police, Ms. Hammer heard a loud noise and, out of the corner of her eye, saw a car drive into the store. Ms. Hammer testified that they were approximately five to six feet away from the door at that time. Then, the Defendant got out of the car and immediately ran towards Ms. Thorpe, who attempted to leave the store via the emergency exit, but it was locked. The Defendant attacked Ms. Thorpe, and Ms. Hammer's testimony describing the events was consistent with that of Ms. Thorpe's. Ms. Hammer attempted to help Ms. Thorpe by hitting the Defendant with a "wet-floor" sign and trying to pull him off of her, but it did not deter him. As a result of her efforts, Ms. Hammer sustained bruising on her arms and head.

Anna Brooks testified that she was the cashier at the Sudden gas station on September 11, 2010, when the incident occurred. Ms. Thorpe came in the store and was "[v]ery upset, scared to death. Very shaky, crying." After the 911 call was completed, she and Ms. Hammer "tried to get [Ms. Thorpe] over there to the Dunkin Doughnut [sic] tables to try to get her and her son calmed down." Ms. Brooks testified that she saw headlights and, thinking she was about to have a customer, walked towards the cash register. Then a car crashed into the store, and the Defendant got out of the car and ran towards them. Ms. Brooks said that she was scared because the Defendant looked "crazy and insane," so she ran to CVS to call 911 "because it seemed like it was so slow getting there."

Officer Michael Loyd, employed with the Springfield Police Department (SPD), testified that when he arrived, the Defendant had one hand on Ms. Thorpe's neck and was punching her with the other hand. Officer Loyd ordered the Defendant to put his hands up, and the Defendant said Officer Loyd would have to kill him. Officer Loyd pepper sprayed the Defendant, and after a scuffle, he and Agent Looney, employed with the Tennessee Bureau of Investigation, handcuffed and placed the Defendant into custody.

The Defendant did not offer any proof at trial.

After deliberations, the jury convicted the Defendant as follows: Count 1, lesser included offense of assault; Count 2, as charged of aggravated assault; Count 3, lesser included offense of attempted second degree murder; Count 4, as charged of attempted aggravated assault; Count 5, lesser included offense of assault; Count 7, as charged of reckless endangerment; Count 8, as charged of vandalism, $1,000 or more; and Count 9, as

---

[4] At the time of the incident, her name was Christine Duits.

charged of theft of property, $1,000 or more. The Defendant was acquitted of Count 6.

At the sentencing hearing, held on March 2, 2012, Egbert Carr testified about a previous incident of domestic violence between the Defendant and Ms. Thorpe. He explained that, while driving home one night, he noticed a man – later identified as the Defendant – who appeared to be striking a woman in front of a child. Mr. Carr stopped and told the couple that they should not be fighting, especially in front of the child, but they kept arguing. He eventually placed the woman – identified as Ms. Thorpe – and the child into his truck and called the police.

SPD officer David Martin testified that he responded to a call about a disturbance on August 24, 2010, and encountered Mr. Carr and Ms. Thorpe; she was upset and shaken. Officer Martin stated that the Defendant was not present when he arrived on the scene. Mr. Carr explained what he saw, and Officer Martin let him go. After taking Ms. Thorpe's statement, Officer Martin took out a warrant on the Defendant for this incident; that warrant was still pending when the charges in the instant case occurred.

Ms. Thorpe testified about the events preceding the August 24, 2010 assault. According to Ms. Thorpe, she was holding her son and walking away from the Defendant, who had refused to leave her home, when he pushed her down on the ground very hard. He was about to hit her when Mr. Carr intervened. Ms. Thorpe also testified about other incidences of violence involving the Defendant: December 7, 2009, he physically assaulted her at Ilene Morrison's house; February 10, 2007, he was convicted of two assaults, one on Ms. Thorpe and one on another female; and August 8, 2004, he assaulted Ms. Thorpe, causing bruising similar to that in the instant case, but the Defendant was never convicted because she dropped the charges. She thereafter secured an order of protection against the Defendant. Ms. Thorpe testified that he was convicted of violating this order in February 2005, and she subsequently had the order dismissed. Ms. Thorpe also testified that there were several, unreported incidences of violence between them, at least one of which she admitted should have been reported. She told the court about the difficulties she and B.K. faced after the September 11, 2010 incident, stating that she was depressed and often afraid and that B.K. woke up every night for six months screaming and terrified. Ms. Thorpe explained that she stayed with the Defendant so long because he kept promising that "it wouldn't happen again." She loved him and "believed that he was being sincere," but he broke that promise "[e]very single time."

On cross-examination, Ms. Thorpe admitted that she had spoken to the Defendant's attorney about the Defendant getting a mental evaluation because she was concerned that he had mental issues. She admitted that over the years she had observed the Defendant drift into another personality and was concerned that he was bipolar.

Timothy Thorpe, Ms. Thorpe's father, testified that he saw photographs of Ms. Thorpe's injuries after the Defendant's August 8, 2004 assault on her. He explained, her "face was bruised, black and blue, she had abrasions on her face, she was almost not recognizable." Mr. Thorpe also corroborated Ms. Thorpe's testimony about the effects the September 11, 2010 incident had on Ms. Thorpe and B.K.

Officer Rippy testified that since the Defendant assaulted him, he had very little trust and was much more cautious now. He also testified that the assault was the most serious incident to occur since he started working in the courts in 2007.

Melva Ilene Morrison, the Defendant's grandmother, testified that the Defendant's mother was fifteen or sixteen when he was born. He was in foster care for the first two years of his life because she could not afford day care; after that, he came to live with her and his mother. Ms. Morrison stated that the Defendant followed the rules and was an "okay" student in school. He got a scholarship to play basketball at a college in Ohio and began classes after high school. She said that the Defendant had many tragedies in his life: his mother's boyfriend, and his only father figure, died of a heart attack when the Defendant was a freshman in high school, and his mother began using drugs; his sister was murdered while he was home from college on spring break; and his mother unexpectedly died of a heart attack two years later. The Defendant refused to talk to anyone about how these events affected him. She stated that the Defendant could live with her in Kentucky if he was released.

The Defendant also testified at the sentencing hearing. He stated that after his sister was murdered, he was really depressed and that he began to have anger issues after the subsequent death of his mom. The Defendant testified that after Ms. Thorpe kicked him out, he "was hurt" and "didn't know what to do," and he went back to Kentucky. He said that he was unaware that there was a warrant out for his arrest at that time.

Turning to the September 11, 2010 incident, the Defendant said that he did not threaten Ms. Thorpe at her home but admitted that he stole a car in Kentucky, drove it to her house, and talked his way inside. The Defendant testified that Ms. Thorpe talked him out of hurting himself that night. He, thereafter, went to the restroom, and when he returned, she was "running away." The Defendant stated, "I really just blacked out. When she took that from me and I blacked out[.]" However, he admitted that was him on the store video presented at trial and that he also attacked Officer Rippy.

When questioned about his previous incidences of violence towards Ms. Thorpe, the Defendant admitted that he had been physical with her in the past but said that the incident at issue was uncharacteristic of their encounters. Referencing Ms. Thorpe's testimony, he

agreed that "there [were] at least three times where the police [were] called, at least one time that she's testified where there's no police called, and [that he had] violated an order not to contact her." The Defendant admitted that he committed the three assaults on Ms. Thorpe – in 2004, 2007, and 2009 – but insisted that he did not commit the assault on the other woman on February 10, 2007, as Ms. Thorpe testified. The Defendant agreed that he would abide by a "no contact" order if imposed by the trial court, that he wanted the trial court to take mercy on him, and that he was willing to take medication and follow the advice of others if required.

The trial court found that mitigating factor (13), the "catchall" mitigator, applied in this case and that the following enhancement factors applied: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the range,[5] on which the trial court placed "a great deal of weight"; (13)(I) that the Defendant was incarcerated in a penal institution when he assaulted Officer Rippy; and (19) that he committed aggravated assault on a law enforcement officer. See Tenn. Code Ann. §§ 40-35-113, -114. However, the trial court noted that factors (13)(I) and (19) "kind of merge together on that being the same type of enhancement factor." After noting the sentencing considerations and the purposes and principles of sentencing, the trial court sentenced the Defendant as follows in case number 2010-CR-668: Count 1, eleven months and twenty-nine days; Count 2, six years; Count 3, twelve years; Count 5, eleven months and twenty-nine days; Count 7, two years; Count 8, four years; and Count 9, four years.[6] Regarding case number 2010-CR-670, the Defendant's attack on Officer Rippy, Counts 1 and 2 were merged, and the Defendant was sentenced to serve four years in the Department of Correction (DOC) as a result of those convictions.

In imposing consecutive sentences, the trial court issued the following findings:

> . . . Under 40-35-115 this Defendant is an offender whose record of criminal activity is extensive. I don't care how you look at it all these assaults are extensive. He's also under subsection four, a defendant who has -- who is a dangerous offender whose behavior indicates little or no regard for human life, and hesitation about committing a crime to which -- or in which the risk to human life is high.

---

[5] The trial court listed the following criminal convictions considered in applying enhancement factor (1): two assaults on Ms. Thorpe, one assault on another victim, theft of services, and violation of a Kentucky order of protection.

[6] Count 4 was merged with Count 3.

Now, what this video shows is a person who, frankly, does not care. He has no ability to -- or no comprehension, whatever you want to call it, of what he is doing to someone else and just doesn't care. His son is screaming in that video, and it makes no affect upon him at all as he continues to bash and tell Ms. Thorpe that he's going to kill her. As he's choking her, taking her head and cramming it into the counter top, is doing what he wants to do.

So the consecutive nature of this is certainly appropriate for the criminal behavior that he has exhibited, and it's also, under the Wilkerson factor -- both of those factors clearly apply in this case.

As such, the trial court ordered as follows: in case number 2010-CR-668, Counts 1 through 3 and Count 5 were to be served concurrently; Count 7 was to be served consecutively to those counts; Counts 8 and 9 were to be served concurrently to each other but consecutively to the preceding counts; and the four-year sentence in case number 2010-CR-670 was to be served consecutively to the effective eighteen-year sentence in case number 2010-CR-668, for a total effective sentence of twenty-two years in the DOC. The trial court denied any form of alternative sentencing finding that the Defendant "ha[d] a long history of criminal conduct" and that confinement was necessary to avoid depreciating the seriousness of the offenses.

This appeal followed.

ANALYSIS

The Defendant contends that the evidence presented at trial is insufficient to sustain his jury conviction for attempted second degree murder and that the sentence imposed by the trial court is inconsistent with the purposes and principles of sentencing. Regarding the latter contention, the Defendant argues that the trial court failed to state what factors it considered in mitigation, pursuant to Tennessee Code Annotated § 40-35-113(13), and failed to make the requisite Wilkerson findings – that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed – in imposing consecutive sentencing. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The State responds that (1) the evidence is sufficient to sustain the Defendant's conviction for attempted second degree murder; (2) that challenging the weight placed on a mitigating factor is not a proper basis for appeal because the trial court articulated many reasons in support of its sentencing decision; and (3) that consecutive sentencing was proper because the Defendant is a dangerous offender and has an extensive criminal history, noting that criminal history is not

restricted to criminal convictions but also criminal behavior.

## A. Sufficiency of the Attempted Second Degree Murder Evidence

The Defendant challenges the sufficiency of his second degree murder conviction, alleging that "the best evidence that [he] did not intend to kill Ms. Thorpe is this: he didn't." He contends that Ms. Thorpe had no life threatening injuries and that his entire course of action showed an intent to commit, and a substantial step towards the commission of, aggravated assault, not second degree murder. As such, his attempted aggravated assault conviction in Count 4 belies his attempted second degree murder conviction in Count 3, and he asks this court to set aside the verdict in Count 3 and reinstate the verdict in Count 4.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

A person is guilty of the offense of second degree murder, as relevant here, upon committing a knowing killing of another. Tenn. Code Ann. § 39-13-210(a)(1). A person attempts to commit second degree murder when he or she acts with the intent to knowingly kill the victim and his or her conduct constitutes a substantial step toward the victim's death. Tenn. Code Ann. § 39-12-101(a)(3). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). Whether a defendant acts knowingly is a question of fact for the jury. See State v. Inlow, 52 S.W.3d 101, 104-05 (Tenn. Crim. App. 2000). The jury may infer a defendant's mental state from "the character of the assault, the nature of the act and from all the circumstances of the case in evidence." Id. at 105.

We conclude that there was sufficient evidence for a reasonable jury to have found, beyond a reasonable doubt, that the Defendant attempted to commit second degree murder. Viewed in a light most favorable to the State, the evidence clearly showed that the Defendant stole a car in Kentucky and drove to Ms. Thorpe's house in Tennessee where he threatened her for over two hours, at one point saying, "[i]f he couldn't have [her,] then no one else could and [that they] were all going to die together that night." When she managed to escape, he chased her into the street and ultimately to a gas station where he crashed the stolen car into the store. He then proceeded to physically attack Ms. Thorpe, mercilessly, despite the pleas from Ms. Hammer and B.K. – the Defendant's two-year-old son – for him to stop. At various points throughout the attack, the Defendant chanted, "Die, b-tch, die. Are you ready to die tonight? You are going to die." Ms. Thorpe testified that the Defendant slammed her head against the counter multiple times, causing her to become dizzy, and that blood began "gushing" from her head. She also testified that he hit her with a barstool several times, that he was choking her and threatening to snap her neck, and that seconds before the police arrived, she believed that she was about to die. Therefore, we conclude that the jury had ample evidence from which to conclude that the Defendant knowingly attempted to commit second degree murder and took a substantial step toward the commission of said offense.

*B. Sentencing*

The Defendant also challenges his sentence on appeal, alleging the following errors: (1) the trial court failed to state on the record the facts it considered in mitigation, pursuant to Tennessee Code Annotated section 40-35-113(13); and (2) in imposing consecutive sentencing, the trial court improperly found that the Defendant had an extensive criminal history and, in also determining that the Defendant was a dangerous offender, failed to make the requisite Wilkerson finding that the additional ten years' incarceration was reasonably related to the severity of the offenses. The State responds (1) that the trial court stated many reasons that support its sentencing decision; and (2) that consecutive sentencing was proper

because even if this court finds that the trial court misapplied one of the two factors – dangerous offender and an extensive criminal history – used to support its imposition of consecutive sentencing, the remaining factor is sufficient to support the trial court's decision.

### 1. Failure to Specify Facts Considered in Mitigation

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012).

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." Id. at 708. Currently, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Our amended Sentencing Act no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. Tennessee Code Annotated section 40-35-210 was amended to provide as follows:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent,

-11-

career, or repeat violent offender. In imposing a specific sentence within the range of punishment, <u>the court shall consider, but is not bound by, the following advisory sentencing guidelines</u>:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

(d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).

"[T]he 2005 amendments rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." <u>Bise</u>, 380 S.W.3d at 706. In accordance with the broad discretion now afforded our trial court's sentencing decisions,

misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

<u>Id.</u>

In the instant case, the trial court found that two enhancement factors, the Defendant's criminal history and his assault on a law enforcement officer while incarcerated, outweighed the catchall mitigating factor. The trial court's failure to specify which facts presented by the Defendant it considered when finding the catchall mitigating factor applicable does not invalidate its sentencing determination because the trial court is not bound by any applicable enhancement or mitigating factors when adjusting the length of a within-range sentence. Additionally, as noted by the State, the trial court articulated other reasons in support of its sentencing decision. Because the record supports the application of the aforementioned

-12-

enhancement factors and reflects that the reasons articulated by the trial court in support of its sentencing decision are consistent with the purposes and principles of sentencing, the Defendant is not entitled to relief on this issue.

## *2. Consecutive Sentencing*

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115 (emphasis added). These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing. See id.;

State v. Denise Dianne Brannigan, No. E2011-00098-CCA-R3-CD, 2012 WL 2131111, at *19 (Tenn. Crim. App. June 13, 2012). However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed [.]" Tenn. Code Ann. § 40-35-103(2), (4).

In the instant case, the trial court imposed consecutive sentencing on the basis that the Defendant's record of criminal activity was extensive and that he was a dangerous offender. Tenn. Code Ann. § 40-35-115(2), (4). The Defendant contends that his criminal convictions were not extensive, noting that his pre-sentence report lists the following convictions: "a misdemeanor assault, a misdemeanor theft, a violation of a protection order, and two driving offenses spread out over a period of six years." However, the Defendant's recitation of his criminal history is incorrect because, as the trial court noted and the Defendant admitted, he has two previous convictions for assaulting Ms. Thorpe and a conviction for assaulting another victim, in addition to theft of services, violation of a protection order, and two driving offenses. Additionally, as the State notes, "[p]rior criminal activity does not require prior convictions; prior criminal behavior is sufficient." State v. Hayes, 337 S.W.3d 235, 267 (Tenn. Crim. App. 2010) (quoting State v. William Lewis Houston, M1999-01430-CCA-R3-CD, 2000 WL 1793088 (Tenn. Crim. App. Dec. 7, 2000)). Although not explicitly mentioned by the trial court, Ms. Thorpe testified at the sentencing hearing about other assaults the Defendant inflicted upon her: specifically, on August 8, 2004, and August 24, 2010,[7] and generally, that there were several unreported incidences of violence between them. The Defendant admitted that he assaulted Ms. Thorpe in 2004 and that there was at least one other unreported incident. Therefore, based on the testimony at the sentencing hearing and the Defendant's presentence report, we conclude that the record supports the trial court's finding that the Defendant's record of criminal activity was extensive.

The trial court also found that the Defendant was a dangerous offender, explaining,

> Now, what this video shows is a person who, frankly, does not care. He has no ability to -- or no comprehension, whatever you want to call it, of what he is doing to someone else and just doesn't care. His son is screaming in that video, and it makes no affect upon him at all as he continues to bash and tell Ms. Thorpe that he's going to kill her. As he's choking her, taking her head and cramming it into the counter top, is doing what he wants to do.
>
> So the consecutive nature of this is certainly appropriate for the criminal

---

[7] This case was still pending at the time of sentencing in the instant case.

behavior that he has exhibited, and it's also, under the <u>Wilkerson</u> factor -- both of those factors clearly apply in this situation.

The Defendant contends that this finding was in error because the trial court did not make the requisite <u>Wilkerson</u> finding that the consecutive sentences reasonably relate to the severity of the offenses committed. <u>See</u> <u>State v. Wilkerson</u>, 905 S.W.2d 933, 939 (Tenn. 1995). In <u>Wilkerson</u>, our supreme court held, "the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." <u>Id.</u> Our supreme court explained, "Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences." Therefore, the trial court must set forth "a principled justification" supported by "particular facts defining an offender subject to consecutive sentences." <u>Id.</u> at 938.

Although the Defendant only challenges the trial court's failure to find one of the Wilkerson factors – that the additional years' incarceration was reasonably related to the severity of the offenses, we first note that the trial court's findings and the record support the applicability of the other factor – that the extended sentence is necessary to protect the public against further criminal conduct by the Defendant. The record evinces that the Defendant knowingly drove his car into a gas station, endangering other individuals, and proceeded to beat his ex-girlfriend mercilessly in front of their two-year-old son, who was pleading with the Defendant to stop. Additionally, when the store clerk tried to help, he assaulted her as well. Furthermore, while incarcerated on these charges, the Defendant attacked a court officer with a makeshift weapon. This evidence indeed illustrates that the public needs to be protected from further criminal conduct by the Defendant. Likewise, the trial court's explicit findings along with its mention of the applicability of the dangerous offender status, pursuant to <u>Wilkerson</u>, indicate that it concluded that the additional ten years' incarceration was sufficiently related to the severity of the offenses, and the record supports such a conclusion. Therefore, we conclude that the trial court's finding that the Defendant was a dangerous offender was not in error and is sufficient to support its imposition of consecutive sentencing. The Defendant is not entitled to relief on this issue.

<u>CONCLUSION</u>

Based on our review of the record and the applicable law, we discern no reversible

error and affirm the judgments of the trial court.


_____
D. KELLY THOMAS, JR., JUDGE